Good morning. My name is Dave Matthews. I represent the appellate in this case, Heidi Eastus. We're here this morning to discuss the Federal Arbitration Act and more particularly what's been come to know as the Transportation Worker Exception, which is found in Section 1 of the Federal Arbitration Act. The district court in this case erred by finding that Ms. Eastus was not a transportation worker. In particular, the error of the court was found in the standard that the court applied. Particularly the court applied a standard that limited the Transportation Worker Exception to only the transportation of goods, not the transportation of passengers. That's important in this case because Ms. Eastus is a 26-year veteran of the airline industry. In particular, she worked in Houston Bush Intercontinental Airport as a supervisor for ticketing and gate agents, the last line of defense, so to speak, right before you get on the plane. We're here today to submit to the court two things, two reasons why Ms. Eastus is in fact a transportation worker and therefore exempt from the FAA. First, because just like railroad workers who are enumerated within Section 1 of the would fall under that same enumerated exemption. That's our first submission to the court. Secondly, we submit that if that's not the case, then Ms. Eastus would qualify as a transportation worker under the residual clause. I'd like to address first the railroad enumeration exemption. This court has read the briefs. There's been a lot of discussion of Circuit City v. Adams, a Supreme Court case back in 2001. In particular, in that case, one quote the Supreme Court said, we see no paradox in the congressional decision to exempt the workers over whom their commerce power was most apparent. Seamen and railroad workers were specifically enumerated in the transportation worker exemption because, as the Supreme Court pointed out, their power to regulate interstate commerce was very apparent as to seamen and railroad workers. Same thing applies to airline workers. Back in 1925 when the Federal Arbitration Act was enacted, the airline industry was just getting started. It seems obvious that they wouldn't have included airline workers because that wasn't a big deal at that time. About ten years later, when the airline industry kept going and was growing and became obvious that they were going to become just as, if not more, important than railroad workers, the Railway Labor Act was amended to specifically include airline workers. And that is the basis of our position that the Federal Arbitration Act, that Ms. Eastus as an airline employee should sit in the shoes as a railroad worker, which was specifically enumerated. Additionally, another quote from the Circuit City case, the Supreme Court said, It is reasonable to assume that Congress excluded seamen and railroad workers from the FAA for the simple reason that it did not wish to unsettle established developing statutory dispute resolution schemes covering specific workers. I mentioned a couple of minutes or a few seconds ago about the Railway Labor Act. That act was in place at the time of the enactment of the Federal Arbitration Act. It does contain specific dispute resolution provisions. I believe that defendants aptly is going to argue that Ms. Eastus is not subject to the Railway Labor Act and that this arbitration agreement in particular in this case is not governed by the Railway Labor Act and we agree with that. We agree that this arbitration agreement is not subject to the RLA. There are very particular provisions within the Railway Labor Act that you have to follow in order to create an arbitration agreement that's enforceable underneath the RLA. So we don't need to show that the arbitration agreement is subject to the RLA. We also don't need to show that this particular dispute would be subject to the RLA because the specific plain language of the Transportation Worker Exception does not say that it excludes from the FAA disputes with railway workers, railroad workers, to the extent that it's covered under the Railway Labor Act. It just is a blanket exclusion of railway workers and in the same sense, we're asking this court to find and adopt the rule that just like railroad workers... What precisely makes this dispute not covered by the RLA? I'm sorry, Your Honor. I didn't mean that it's not. I said, I meant to say that we don't need to show that it's not. Well, I thought you said it was not covered, you don't dispute it. I said that the arbitration agreement itself is not covered, is not governed. Why? Because the arbitration agreement that's in place specifically states that it's governed by the FAA. The RLA, and I don't have a specific site, it's 41 U.S.C. 181, around that area, addresses very specific procedures that have to be put in place to have an enforceable arbitration agreement under the RLA. For example, there has to be a specific number of arbiters that are defined and it's... And what railroad workers are covered by the RLA, everybody? I don't know the answer to that, but yes, my... How can you say yes if you don't know the answer? Track workers, what every railroad worker is covered by the RLA? I don't know the answer to that, Your Honor. I'll be happy to brief that and get back with the court, but it's general railroad workers. But I don't want to get lost on the specifics of the Railway Labor Act. Our position, I want to keep very simple, specifically, the railroad workers are specifically enumerated by Congress in Section 1, 10 years after the enactment of the FAA, the Railway Labor Act. They include airline workers, therefore, the Supreme Court's reliance upon that legislative history to that end in Circuit City makes a reasonable inference that we could attribute that same status to airline employees. How is she different from a longshore worker? Good question, Your Honor. That leads me to my second point. I'm happy to go there. I believe that the longshore worker would come more into play when we talk about proximity. And I don't mean to be avoiding your question. I'm trying to get there. The second argument that we have under the residual clause deals with the issue of proximity to the actual transportation. I'm sure the Court's looked at all of the cases that have been cited that deal with what specific employees, workers are exempt and which ones aren't. For example, I think that we can all agree that if you're actually physically driving a truck across state lines carrying goods, you are a transportation worker. I don't think, even though the transportation worker exception is supposed to be narrowly applied and narrowly construed, if the transportation worker exception only applies to the individuals who are actually driving the truck, flying the plane across state lines, that is an extremely narrow... Let's go back to longshoremen. And longshore workers working on the shore, just like Ms. Eastus, she's not on the plane. Right, they're loading, on the dock, loading the ships. Right, they're loading the ships, loading the docks. The difference between Ms. Eastus is in the proximity, and specifically in the activities that she's doing. And I analyzed this. There's a difference between an individual who's loading a ship, loading a truck, and Ms. Eastus, who has very key responsibilities for security of planes and passengers. She's checking... What if I assume that the ship workers have the same sort of thing? They may. They may. They're not covered. But, yes, that is correct. But in terms of... Our argument is that you can't separate the fact that Ms. Eastus and the airline industry is so inherently transportation-related. What I mean by that is there are a number of cases that deal with individuals who are loading trucks, might be loading a truck at a manufacturing facility, manufactured widget. The certain employees within that factory manufactured the widget and were clearly not transportation workers. But if I'm employed by the same company, the same factory, and I just happen to be working in the shipping department loading trucks, that's distinct from Ms. Eastus, who is working in the transportation industry. The sole purpose of her job is to transport people from A to B. What is the purpose of loading a truck? What is the purpose of loading a truck? We'll stick with your hypothetical. What would be the purpose of loading a truck? Yeah, the purpose of loading a truck is, you know, to get the stuff, the widgets, onto the truck. So that it can move in interstate commerce. So that it can move in interstate commerce. What would be the purpose of loading the boat? The purpose of loading a boat? I think it would depend on, are we talking about goods to move interstate commerce? Same thing. Because we agree that the transportation of goods clearly satisfies, right? So your principal contention, I took it in response to the chief judge, was about the distinction between goods and passengers. So let's stick with goods, because that's easy. What's the purpose of loading the boat? Purpose of loading the boat is to get the goods on the boat to ship. For interstate commerce. Correct. So it would strike me that if the person loading the boat and the person loading the truck are clearly excluded, I don't understand how someone who, at the best, is loading the plane would be included. I appreciate the question, Your Honor. The difference is the fact that, well, two things. There is more involved with loading people on the plane than loading boxes. There's more danger, especially this day and age, that's involved. You've got to verify identities, you've got to verify, you know, weight, I mean, if we're talking about airplanes and so forth. So there's more involved. The second point that I make is there has to be a distinction between whether the company itself is particularly, their particular purpose is to transport within interstate commerce versus that's an incidental purpose. And I go back to my example of the manufacturer incidentally shipping versus, you know, there's a few cases in here that deal with, you know, like Airborne Express, where that's your particular purpose. I do want to make sure that I hit on one very key thing that I think is most important. When we were talking about goods, talking about passengers, above all, I encourage the court and hope that we can come to a consensus that the Third Circuit, in seeing we decided in our reply significantly, holds that we're not just talking about goods, we're talking about passengers. I think that's supported by the Supreme Court in Circuit City because that case didn't have anything to do with, well, that was a much broader, it was a much broader issue. The issue in Circuit City was does the exception apply only to transportation workers or all employment contracts of all workers? I think that is the same issue that this court addressed in Rojas. That Rojas involved a disc jockey, clearly a disc jockey that's working in a radio station in San Antonio is not a transportation worker. So I'd like to conclude my initial time with that, that we haven't talked about it much, but under the residual clause, I ask that the court find that the residual clause is not limited to just transportation of goods, but also applies to transportation of passengers. And we've got the rebuttal time. Good morning, may it please the court, William Halfand for ISS Services. The, it is correct to say that the district judge, consistent with this court's holding in Rojas, decided that the exclusion or exception to Section 1 did not apply to Ms. Eastis because she did not engage in the type of work that railroad workers or seamen would do in the carriage of goods. That is a correct statement. And that's what this court held was dispositive in Rojas, citing the Sixth Circuit's opinion in Asplund. But that is not dispositive of the issue before the court in its entirety here today, because despite the representation that Ms. Eastis may have worked in the airline industry before she went to work for ISS, she was not an employer of a transportation company. And the employment cause of action that she's alleged is against a services company. And to the Chief Judge's question, that's really why the RLA does not apply. The RLA authorizes alternative dispute resolution procedures with railroad employees subject to a collective bargaining agreement. So the reason neither the RLA, nor the Jones Act, nor the Shipping Commissioners Act of 1872, which the Supreme Court pointed to in Circuit City, none of those apply because Ms. Eastis didn't work for a company that's involved in transportation. Indeed, Ms. Eastis seems to test the outer limits of the well-stated proposition of the Department of Transportation from the District of Kansas that, quote, in theory, all employees could trace a relationship to a transportation worker. And if the court were to accept Ms. Eastis' proposition, all UPS drivers, all Federal Express drivers, all people who load Federal Express and UPS packages would be subject to the transportation exception. The people who work at the restaurants and the newsstands on what they call the airside, past security in the airport, would also be transportation workers because they actually provide greater, more direct services to airline passengers than Ms. Eastis ever did. The record shows without dispute that ISS is a staffing company, not a transportation business at all. That's at 25 of the record. The company is involved in facility management, cleaning and janitorial services, security services, property services, catering, and other business support services. Ms. Eastis was not a transportation worker, but rather she was hired as an account manager. That's at record 25, I'm sorry, record 10. They assigned her the work of managing other ISS employees who actually did the work of the customer. The specific job that Ms. Eastis was assigned to do for ISS is set forth in the record, it's undisputed, at 155 and 166, and that was recruiting, hiring, training, and supervising other ISS employees. Her specific job functions were payroll, budgeting, and clerical work. And in fact, Ms. Eastis wasn't even in that role during the last three months of her employment when she elected to resign, claiming a hostile work environment. For the last three months of her employment, Ms. Eastis had been removed from any relationship to Lufthansa whatsoever, and she was doing processing and billing and payroll for ISS as well as ad hoc administrative work. That's also undisputed at record 58. At the closest Ms. Eastis comes, she was a supervisor of other people who assisted people in connection with passenger airline travel. Now, even before the Supreme Court's decision in Circuit City, Rojas, which respectfully binds this panel, forecloses Ms. Eastis' contention that the exception in Section 1 applies to her. Specifically in Rojas, quoting the Esplande tree case from the Sixth Circuit, this court applies, are those engaged in the movement of goods in commerce. Now, of course, the Supreme Court later in the Circuit City case adopted the same proposition and further counseled that a narrow construction of the phrase transportation worker is required, and of course, under the doctrine of Eustimus Generis, said that the court must identify a job function that is similar to seaman and railroad workers and actually engaged in the same way as those employees are. Thus, Ms. Eastin is even less than a transportation worker than was the plaintiff in Saxon versus Southwest Airlines, which was decided about the time that these briefs were filed. Ms. Saxon was actually a Southwest Airlines employee, and the Northern District of Illinois held that she was not subject to the transportation worker exception because what she did was supervise the people who loaded bags onto the Southwest Airlines plane. Cited in the brief at page 16, the Perez versus Globe Airport Security Services case, a case in which the 11th Circuit held that a pre-departure security agent at the Miami International Airport was not a transportation worker, even though his job was guarding baggage that was going to be loaded onto the plane. And then in Peterson versus Mercury Air, also cited at page 16 of the brief, line workers who actually serviced aircraft were found by the Northern District of Georgia not to be transportation workers. And as the Court knows, the New York Supreme Court in 2011 held pilots for JetBlue are not transportation workers. Now, if the pilot flying the plane is not a transportation worker, obviously the person who supervises the people who take the tickets to allow them to be on the plane is not a transportation worker. Indeed, I think Ms. Eastin is even less than a transportation worker than this Court confronted in Judge Southwick's opinion in Edwards versus DoorDash, in that those people actually delivered goods and food, and yet while that issue wasn't raised, clearly those individuals were also not transportation workers. Ms. Eastin's assertion is that she's loosely affiliated with transportation, and obviously that falls short. As the Circuit City case explained, and as the Supreme Court reaffirmed last year in New Prime versus Oliveira, the reason the Supreme Court has determined that the reason Congress carved out transportation workers, seamen and railroad workers, was because of the fact that Congress had independently legislated as to the dispute resolution for those procedures for those individuals, that being the RLA, the Shipping Commissioners Act of 1872, as to railroad workers and airline workers in 1936 and seamen, respectively. It is that distinction that holds here, and to the extent that Ms. Eastin must acknowledge that she is not subject to either of those independent legislative schemes for dispute resolution, she does not fall . . . Why is she not subject to the RLA? Well, first of all, because she's not an employee of a railroad or of an airline. She's an employee of a staffing company that assigned her. Secondly, because she doesn't have a collective bargaining agreement with her employer, which is where the RLA provides enforcement of alternative dispute resolution procedures. 9 U.S.C. talks about railroad employees. What has case law defined specifically railroad employees? I'm not familiar with, and in researching, did not find a delineation of railroad employees in terms of where that line is drawn, if that's what Your Honor is asking. But again . . . It doesn't say railroad worker, but it says railroad employees. Right. I think the answer to that, though, then lies in the very point raised by the Supreme Court in Circuit City, and again reaffirmed by last year's opinion in New Prime, and that is, it's not so much the definition of that employee, but rather whether that person is an employee whose dispute resolution procedure has been legislated separately by Congress, and that's where the Supreme Court explained the distinction and the requirement of justum generis. In the Circuit City case, the Court explained that the reason for that carve-out, that exception, was because Congress had independently legislated as to those class of workers. So perhaps it answers your question, Chief Judge, that it's not so much what the job is for the railroad, but whether that individual falls within a collective bargaining agreement that provides its own dispute resolution procedure, which is what the Circuit City Court, and then again the New Prime Court, said was the important distinction as to the exception. I would respectfully submit that while the Court should follow its own precedent that carriage of goods in interstate commerce is the test under Rojas, even if the Court departs from that and finds that carriage of goods or individuals in interstate transportation is the appropriate test, it should affirm the trial court's order compelling this matter to arbitration. I would, I guess it's probably worth noting that the Singh case is out of step with the Supreme Court's holding in Circuit City, and with respect to the author of the opinion, it seems to take great pains to try to distinguish the Circuit City opinion as merely dicta as opposed to a Supreme Court holding by which, under which the circuit is bound. It's also notable that in that case the Court was considering a 12B6 issue, and therefore purposely confined itself solely to the pleadings, and indeed remanded the case to determine whether the Uber driver in question, Mr. Singh, was engaged in interstate commerce. I don't think it provides any help to the resolution of the question before this Court, particularly in light of the fact that this Court has controlling authority on the direct issue. I appreciate the opportunity. Thank you very much. Please support. Just a few things I want to address that were brought up. Number one, Mr. Helfand says that Ms. Isis was not an employee of an airline, not an employee of a transportation worker. I think it's really important that we call the attention to that at this stage, procedurally, the case was filed, and the first thing that was done was this motion to compel arbitration. Under that procedural posture, the Court has held it to a standard of motion to dismiss, so we would take the pleadings as true, and we have pled that Isis was jointly employed by both ISS, which Mr. Helfand was focusing on, but also jointly employed with Lufthansa. I won't belabor that point, but if you have questions, I'm happy to go further into it. But the second, I think we have to, again, and we've addressed this in the brief, so I also don't want to belabor it, but the distinction between goods and passengers I think is of  I respectfully disagree with Mr. Helfand when he dismisses the Singh case. A more in-depth reading of this Court's case in Rojas and the Circuit City case, again, those deal with employees whose work did not have anything to do with transportation. It was a retail worker at a Circuit City electronics store in California. It was a disc jockey in San Antonio. The question had nothing to do with actually transporting goods. It was a much broader question. Is that Section 1 exception limited to transportation workers, or does it apply to all? So that wasn't the specific issue in Circuit City, and any reference to goods within Circuit City was dicta. It was just choice of words. It would have been more difficult to write and to read to say goods or passengers when passengers didn't even come up. Taking that one step further, there were a number of cases cited that I want to go through a few because once we get past that first hurdle in the residual clause analysis that it does apply to passengers as well as goods, I used the word proximity before. The next question is, is that worker, are they closely enough related to the actual transportation, to the actual movement? The JetBlue case that I believe was a state court case out of New York that said that question, the goods versus passengers, because that case, with respect to the court, was just incorrectly decided. On one end of the proximity question, you have, like your disc jockey, you have your Circuit City employee, clearly not a transportation worker. On the other end, you have truck drivers. We submit you have pilots that clearly are actually driving or flying the vessel, the airlines. Those are your two extremes. In the middle, you've got a bunch of different examples, and there are probably 20 of the cases that were cited in the briefs dealt with that. For example, Trans versus Texas Lincoln Mercury, it's a 2007 Southern District of Texas case, dealt with a finance manager at a car dealership. Deals with cars, doesn't drive the cars, not a transportation worker, and much more aligned with the Circuit City worker. Going a step further, and Mr. Helfand did bring up a couple of cases with security workers at airports, and Mr. Helfand wants us to align those security workers with Miss Estes, and we would say those are distinguishable. Those cases dealt with security pre-9-11, so they're akin to your TSA workers, you go through the airport. Their job doesn't have anything to do with getting people onto the planes, doesn't have anything to do with verifying their identity, so forth and so on. It's security, it's important, but it's farther removed from the actual plane. Miss Estes supervised the gate agents, the people that were the last people that you saw before you got on the plane, and for all of those reasons, we would ask the court to reverse and remand the case back to the district court.